**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| ERNEST GIBSON,<br><br>               Plaintiff,<br><br>    v.<br><br>AMERICAN CYANAMID CO., et al.<br>               Defendants. | Case No. 07-cv-00864-LA |
| DEZIREE VALOE, et al.,<br><br>               Plaintiffs,<br><br>    v.<br><br>AMERICAN CYANAMID CO., et al.,<br>               Defendants. | Case No. 11-cv-00425-LA |

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION .................................................................................................... 1

PROCEDURAL HISTORY AND BACKGROUND ................................................ 3

    I.      HISTORY OF RISK-CONTRIBUTION IN WISCONSIN ................. 3

    II.     THE GIBSON AND VALOE PLAINTIFFS ........................................ 6

          A.    Ernest Gibson ............................................................................ 6

          B.    Deziree and Detareion Valoe ..................................................... 7

    III.    THIS COURT'S PRIOR RULINGS ON WARNING CLAIMS ........... 9

    IV.   REMAINING WLC PLAINTIFFS HAVE A PATH FORWARD ON
            LEAD DUST EVIDENCE ................................................................ 10

LEGAL STANDARD ............................................................................................ 11

ARGUMENT .......................................................................................................... 12

    I.      PLAINTIFFS HAVE ADEQUATELY PLED CLAIMS FOR
            NEGLIGENT AND STRICT LIABILITY FAILURE TO WARN ..... 12

          A.    Plaintiffs Stated Claims for Negligent and Strict Liability Failure
               to Warn at the Time Plaintiffs *Were Injured.* ............................. 12

          B.    Plaintiffs Stated Claims for Negligent and Strict Liability Failure
               to Warn at the Time the *WLC Products Were Sold.* .................... 16

    II.     PLAINTIFFS' GENERAL NEGLIGENCE CLAIMS ARE
            RECOGNIZED BY WISCONSIN LAW ........................................ 18

    III.    PLAINTIFFS HAD LEAVE OF COURT TO ASSERT THEIR PUBLIC
            NUISANCE CLAIMS ...................................................................... 20

    IV.   PLAINTIFFS' HAVE PLED VALID PUBLIC NUISANCE CLAIMS ......... 21

          A.    Ensuring Children, Who Are Particularly Susceptible to Lead
               Poisoning, Live in Lead- Free Housing a Cognizable Public Right. ......... 22

          B.    The Underlying Tortious Conduct Required for a Public Nuisance
               Claim was Adequately Pled. ......................................................... 24

          C.    Plaintiffs Suffered Specialized Injuries from Defendants' Public
               Nuisance, Giving Them Standing to Sue for Damages. ............................. 26

CONCLUSION ....................................................................................................... 29

# TABLE OF AUTHORITIES

**C**ASES

*Aida Engineering, Inc. v. Red Stag, Inc.*,
629 F. Supp. 1121 (E.D. Wis. 1986) .................................................................................. 20

*Arnett v. Webster*,
658 F.3d 742 (7th Cir. 2011) ............................................................................................. 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................... 11

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) ............................................................................................. 14

*Bostco LLC v. Milwaukee Metropolitan Sewerage District*,
835 N.W.2d 160 (Wis. 2013) .................................................................................. 21, 26, 27

*Burton v. American Cyanamid Co.*,
588 F. Supp. 3d 890 (E.D. Wis. 2022) ..................................................................... 2, 10, 12

*Burton v. American Cyanamid*,
334 F. Supp. 3d 949 (E.D. Wis. 2018) ................................................................................ 9

*Burton v. E.I. du Pont de Nemours & Co.*,
994 F.3d 791 (7th Cir. 2021) ..................................................................................... passim

*Cannon v. Armstrong Containers Inc.*,
92 F.4th 688 (7th Cir. 2024) ................................................................................... 1, 2, 3, 8

*City of Milwaukee v. NL Industries, Inc.*,
691 N.W.2d 888 (Wis. App. 2004) ......................................................................... 21, 22, 27

*City of Sterling Heights Police & Fire Retirement System v. Kohl's Corp.*,
13-C-1159, 2015 WL 1478565 (E.D. Wis. Mar. 31, 2015) ................................................. 14

*Collins v. Eli Lilly Corp.*,
342 NW 2d 37 (Wis. 1984) ............................................................................................. 3, 4

*Coppe Healthcare Solutions, Inc. v. Brightsky, LLC.*,
24-CV-88, 2024 WL 3291028 (E.D. Wis. July 3, 2024) ..................................................... 11

*Dippel v. Sciano*,
155 N.W.2d 55 (Wis. 1967) ............................................................................................... 16

*Dixon v. Jefferson Capital System, LLC*,
No. 119CV02457JMSDML, 2021 WL 4943060 (S.D. Ind. July 13, 2021) ........................... 20

*Estate of Schilling v. Blount, Inc.*,
449 N.W.2d 56 (Wis. Ct. App. 1989) ................................................................................. 14

*Fosnight v. Jones*,
41 F.4th 916 (7th Cir. 2022) ....................................................................................... 11, 14

*General Electric Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) ........................................................................................... 12

*Gibson v. American Cyanamid Co.*,
   760 F.3d 600 (7th Cir. 2014) ............................................................................ 7

*Glenn Burton, Jr. v. American Cyanamid Co.*,
   No. 07-C-0303, 2022 WL 3368101 (E.D. Wis. Aug. 16, 2022) ............................ 2

*Godoy ex rel. Grambling v. E.I. duPont Nemours & Co.*,
   768 N.W.2d 674 (Wis. 2009) ............................................................................ 6

*Greiten v. LaDow*,
   70 Wis. 2d 589, 235 N.W.2d 677 (Wis. 1975) ............................................ 18, 19

*Horst v. Deere & Co.*,
   769 N.W.2d 536 (Wis. 2009) .......................................................................... 16

*Howes v. Deere & Co.*,
   71 Wis. 2d 268, 238 N.W.2d 76 (1976) .......................................................... 19

*Ileto v. Glock Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ........................................................................ 28

*Johnson v. Bryco Arms*,
   304 F. Supp. 2d 383 (E.D.N.Y. 2004) ............................................................ 27

*Jost v. Dairyland Power Co-op.*,
   172 N.W.2d 647 (Wis. 1969) .......................................................................... 25

*Kozlowski v. John E. Smith's Sons Co.*,
   275 N.W.2d 915 (Wis. 1979) .......................................................................... 17

*Luevano v. Wal-Mart Stores, Inc.*,
   722 F.3d 1014 (7th Cir. 2013) ........................................................................ 11

*Milwaukee Metropolitan Sewerage District v. City of Milwaukee*,
   691 N.W.2d 658 (Wis. 2005) ................................................................ 22, 24, 25

*Olsen v. Ohmeda, Division of BOC Group, Inc.*,
   863 F. Supp. 870 (E.D. Wis. 1994) ................................................................ 17

*People v. ConAgra Grocery Products Co.*,
   227 Cal. Rptr. 3d 499 (Cal. Ct. App. 5th 2017) .............................................. 23

*Physicians Plus Insurance Corp. v. Midwest Mutual Insurance Co.*,
   646 N.W.2d 777 (Wis. 2002) ............................................................... 3, 21, 25

*Richards v. Jefferson County*,
   517 U.S. 793 (1996) .......................................................................................... 1

*Sharp ex rel. Gordon v. Case Corp.*,
   227 Wis. 2d 1, 595 N.W.2d 380 (Wis. 1999) .................................................. 19

*State v. Michels Pipeline Construction, Inc.*,
   217 N.W.2d 339 (Wis. 1974) .................................................................... 22, 23

*State v. Michels Pipeline Construction, Inc.*,
   219 N.W.2d 308 (Wis. 1974) .......................................................................... 22

*Strasser v. Transtech Mobile Fleet Service, Inc.*,
    613 N.W.2d 142 (Wis. 2000) ........................................................................ 16

*Thomas ex rel. Gramling v. Mallett*,
    701 N.W.2d 523 (Wis. 2005) .............................................................. passim

*White v. Hefel*,
    875 F.3d 350 (7th Cir. 2017) ................................................................... 14

<u>S</u>TATUTES

Wis. Stat. 823.01 ............................................................................................ 26

<u>O</u>THER <u>A</u>UTHORITIES

City of Milwaukee Ordinance § 66-22 ......................................................... 23

Prosser, *Private Action for Public Nuisance*,
    52 Va. L.Rev. 997 (1966) .......................................................................... 29

<u>R</u>ULES

Wis. JI-Civil 3242 .......................................................................................... 16

<u>T</u>REATISES

Prosser, Law of Torts (Third), § 88 (*Nuisance*) ........................................... 25

Restatement (Second) of Torts § 821B(2) ..................................................... 22

Restatement (Second) of Torts § 821C .................................................... 26, 29

**INTRODUCTION**

Three Plaintiffs—Ernest Gibson, Deziree Valoe, and Datareion Valoe (collectively, "Plaintiffs")—bring claims against Armstrong Containers, Inc., EIDP, Inc., The Atlantic Richfield Company, and The Sherwin-Williams Company (collectively "Defendants") for childhood white-lead carbonate ("WLC")-induced lead poisonings. Despite years of procedural and substantive developments in ***separate but related*** matters, the Seventh Circuit properly characterized the Gibson and Valoe Plaintiffs as "s[itting] largely on the sidelines" while other WLC cases progressed through this Court. *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 712 (7th Cir. 2024). In *Cannon*, which substantively addressed the applicability of the doctrines of law of the case and issue preclusion—not the liability of Defendants under Wisconsin law, the Seventh Circuit explicitly rejected extending collateral estoppel and other preclusion doctrines to bind these Plaintiffs to summary judgment rulings in cases brought by other plaintiffs, noting that preclusion "deprived [Gibson and Valoe Plaintiffs] of the 'full and fair opportunity to litigate'" and would violate their due process rights. *Cannon*, 92 F.4th at 712 (citations omitted).[1] Plaintiffs now bring their cases against the Defendants for injuries sustained as children in the Milwaukee area, invoking the "deep-rooted historic tradition that everyone should have his day in court." *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996).

In *Burton v. E.I. du Pont de Nemours & Co.*, 994 F.3d 791 (7th Cir. 2021) ("*Burton II*"), the Seventh Circuit was mindful in pointing out that it did not intend its rulings on strict liability failure to warn and ordinary negligence to foreclose the possibility of other WLC claimants—such as the Plaintiffs here—from recovering under the risk-contribution theory of liability. 994 F.3d at

---

[1]     The Seventh Circuit also found that applying the "law of the case" rulings on the questions of duty to preclude Plaintiffs' claims would not be appropriate. *Cannon*, 92 F.4th at 713, fn. 11.

825 ("We are mindful, however, that there are a slew of similar cases pending at the district court and moving toward trial. As such, we will address some of these other issues in hopes of providing clarity for future trials."). This declaration, coupled with the reality that *Thomas ex rel. Gramling v. Mallett*, 701 N.W.2d 523 (Wis. 2005), remains the law in Wisconsin, affirms that there is a legal path forward for the Plaintiffs here.

Plaintiffs are not bound by this Court's prior rulings on negligent failure to warn in other WLC cases, nor are they bound by other plaintiffs' choice not to "contest [duty to warn under a negligence claim] by introducing evidence concerning the ordinary consumer's lack of knowledge of lead dust . . . ." *Glenn Burton, Jr. v. Am. Cyanamid Co.*, No. 07-C-0303, 2022 WL 3368101, at *8 (E.D. Wis. Aug. 16, 2022), *appeal dismissed sub nom. Burton v. Am. Cyanamid Co.* (7th Cir. Dec. 1, 2022), *and aff'd in part, rev'd in part and remanded sub nom. Cannon v. Armstrong Containers Inc.*, 92 F.4th 688 (7th Cir. 2024) ("Reconsideration Order"). Unlike the prior WLC plaintiffs, the Plaintiffs here have ***timely*** pled and raised lead dust allegations to support their failure to warn claims which, as this Court has commented, may lead to evidence that "would allow a reasonable jury to find that, although modern consumers may have been aware of some of the dangers of lead-based paint, they were not aware of a specific danger involving lead dust." *Burton v. Am. Cyanamid Co.*, 588 F. Supp. 3d 890, 899 (E.D. Wis. 2022), *appeal dismissed* (7th Cir. Dec. 1, 2022), and *aff'd in part, rev'd in part and remanded sub nom. Cannon v. Armstrong Containers Inc.*, 92 F.4th 688 (7th Cir. 2024), and *appeal dismissed* (7th Cir. Dec. 1, 2022), and *aff'd in part, rev'd in part and remanded sub nom. Cannon v. Armstrong Containers Inc.*, 92 F.4th 688 (7th Cir. 2024) ("Burton SMJ Order"). Plaintiffs have pled allegations regarding the hidden dangers of lead dust that are consistent with duty requirements as outlined by the Seventh Circuit in *Burton II*. These allegations, when viewed in the light most favorable to the Plaintiffs, state

2

valid claims for relief under Wisconsin law, making dismissal inappropriate at this juncture. Consistent with *Cannon*, Plaintiffs are not precluded from making these arguments and should be able to develop their factual records accordingly.

Further, Plaintiffs have properly pled the necessary elements of public nuisance to withstand Defendants' Motions. Plaintiffs are permitted to bring public nuisance claims as private individuals because their specialized personal injuries stem, in part, from the alleged interference by Defendants. Lead-based paint has been recognized as a public nuisance in the City of Milwaukee. Defendants' manufacture and marketing of WLC and its toxic qualities created an unreasonable interference with Plaintiffs' and Milwaukee's public right to lead-free housing. Defendants' continued interference constitutes a public nuisance. For these reasons, Defendants' motions as to Plaintiffs' public nuisance claims should likewise be denied.[2]

Plaintiffs must be afforded the opportunity to develop their own factual records and litigate their validly-pled claims; their claims cannot be dismissed for "the efficient pursuit of finality." *Cannon*, 92 F.4th at 713.

## PROCEDURAL HISTORY AND BACKGROUND

Plaintiffs bring their strict liability and negligence claims under the risk-contribution theory of liability, recognized as a constitutionally-protected remedy for childhood lead poisoning victims, such as the Plaintiffs here, by the Wisconsin Supreme Court in *Thomas*.

## I.    HISTORY OF RISK-CONTRIBUTION IN WISCONSIN

The Wisconsin Supreme Court first applied risk-contribution in *Collins v. Eli Lilly Corp.*, 342 NW 2d 37, 40 (Wis. 1984), in order to provide a remedy to a plaintiff grievously injured in

---

[2]     Plaintiffs are electing not to proceed on public nuisance-based requests for abatement. Instead, Plaintiffs solely seek "damages resulting from the maintenance of a public nuisance." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 646 N.W.2d 777, 789 at n.18 (Wis. 2002).

3

young adulthood by her mother's ingestion of diethylstilbestrol ("DES") to prevent miscarriage during pregnancy. The court grounded the application of risk-contribution in Art. I, sec. 9 of the Wisconsin Constitution which mandates Wisconsin courts to fashion adequate remedies for injuries. The *Collins* court held that risk-contribution was necessary to provide the required remedy under the law to plaintiffs, such as Collins, who were unable to identify the precise manufacturer or marketer of the drug that injured her. *Id*. at 180-81. Further, the *Collins* court accepted that "[t]he defendants are faced with possible liability for DES which they may not have ***produced or marketed***," *id*. at 49 (emphases added), a reality that the court found was outweighed by "the interests of justice and fundamental fairness" which demanded that "the defendants, who may have provided the product which caused the injury" should "bear the cost of injury," *id*. at 191. The *Collins*, court likewise confirmed risk-contribution's applicability in other contexts: "[w]e note that this method of recovery could apply in situations which are factually similar to the DES cases." *Id*. at 191.

In *Thomas*, the Wisconsin Supreme Court found just such "factually similar circumstances" and extended risk-contribution to individuals who "sustained lead poisoning by ingesting lead paint from accessible painted surfaces, paint chips, and paint flakes and dust." 701 N.W.2d at 528. Similar to the DES victims in *Collins*, the *Thomas* court recognized that the "problem" facing a Wisconsin lead-poisoning victim is that he is "unable to identify the precise producer of the [WLC] pigment he ingested at his prior residences due to the generic nature of the pigment, the number of the producers, the lack of pertinent records, and the passage of time." *Id*. at 532. The court then concluded that any and all victims of childhood lead poisoning have the same constitutional right under the Wisconsin constitution to a remedy against former producers or marketers of WLC as did the plaintiffs in *Collins* if they could prove their claims. In recognizing

4

the applicability of risk-contribution to WLC cases, such as the cases at issue here, the court provided roadmaps for bringing common law claims against WLC manufacturers and marketers.

To bring a strict liability claim under risk-contribution must, a plaintiff injured by WLC must establish:

(1) That the [WLC] was defective when it left the possession or control of the pigment manufacturers;

(2) That it was unreasonably dangerous to the user or consumer;

(3) That the defect was a cause of [plaintiff's] injuries or damages;

(4) That the pigment manufacturer engaged in the business of producing or marketing white lead carbonate or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the pigment manufacturer; and

(5) That the product was one which the company expected to reach the user or consumer without substantial change in the condition it was when sold.

*Id*. at 550. To lodge a viable claim for negligence, a plaintiff must prove:

(1) That he ingested [WLC];

(2) That the [WLC] caused his injuries;

(3) That the Pigment Manufacturers produced or marketed the type of [WLC] he ingested; and

(4) That the Pigment Manufacturers' conduct in producing or marketing the [WLC] constituted a breach of a legally recognized duty [to the plaintiff].[3]

*Id*. at 564.

---

[3] The *Thomas* court also crafted two exculpatory defenses for the WLC producers and marketers:

Once [plaintiff] makes a prima facie case under either claim, the burden of proof shifts to each defendant to prove by a preponderance of the evidence that it did not produce or market white lead carbonate either during the relevant time period or in the geographical market where the house is located. However, if relevant records do not exist that can substantiate either defense, "we believe that the equities of [white lead carbonate] cases favor placing the consequences on the [Pigment Manufacturers]."

*Id.* at 564-65.

The Wisconsin Supreme Court subsequently reaffirmed application of risk-contribution to WLC cases in *Godoy ex rel. Grambling v. E.I. duPont Nemours & Co.*, 768 N.W.2d 674, 685-86 (Wis. 2009) (rejecting defective design claims while negligence and failure-to-warn claims survived). In addition, the *Godoy* court rejected WLC producers' or marketers' argument that they were immune from liability when they sold WLC to another paint company for integration into paint. *Id.* at 688.

## II. THE GIBSON AND VALOE PLAINTIFFS

### A. Ernest Gibson

Ernest Gibson was lead poisoned in the late 1990s while residing at 2904 West Wisconsin Avenue, a property built prior to 1978. *See* Gibson First Am. Compl., ECF No. 540 at ¶ 36. On or about June of 1999, while Mr. Gibson was a child, he sustained lead poisoning by ingesting white lead carbonate manufactured and marketed by the Defendants. *Id.* at ¶ 38. Mr. Gibson's elevated blood lead levels peaked to 37.00 µg/dL, more than 10 times the current blood lead reference value of the Center for Disease Control ("CDC"). *Id.* at ¶¶ 12, 39. As a result of his lead exposure, Mr. Gibson suffered injuries "different in both kind and degree from the injuries suffered generally by the public." *Id.* at ¶ 133. As a further result of the Defendants' actions regarding WLC, Mr. Gibson suffered "severe and permanent sequelae, including, but not limited to, great pain of body and mind and significant neuro-psychological deficits, past and future hospital and medical expenses, and impairment of [his] ability to learn, [and] live and enjoy life." *Id.* at ¶ 83.

Mr. Gibson's case was initially filed in the Milwaukee County Circuit Court on December 22, 2006. In September of 2007, the Defendants removed Mr. Gibson's case to the Eastern District of Wisconsin, where it sat before the Honorable Rudolph Randa. *See* Notice of Removal, 2:07-cv-00864-LA (E.D. Wis. Sept. 26, 2007), ECF No. 1. Despite the age of Mr. Gibson's case, which includes an individual appeal to the Seventh Circuit, *Gibson v. Am.*

*Cyanamid Co.*, 760 F.3d 600, 609 (7th Cir. 2014), Mr. Gibson's case has largely remained "on the sidelines" and inactive while other lead-poisoned plaintiffs' cases (e.g., *Burton*, *Owens*, and *Sifuentes*) proceeded to litigate their WLC claims. Virtually no case-specific discovery has occurred in Mr. Gibson's case.

  **B.  Deziree and Detareion Valoe**

  Deziree and Detareion Valoe (collectively referred to as "Valoe Plaintiffs") are siblings who sustained lead poisoning from ingestion of WLC while they resided at 2957 N. 37th Street, a house built before 1978, in the mid-2000s. *See* Valoe Third Am. Compl. at ¶ 38, ECF No. 385. Detareion Valoe's elevated blood lead levels reached 29.00 µg/dL and Deziree Valoe's elevated blood lead levels reached 49.00 µg/dL, more than eight and 14 times higher than the CDC's blood lead reference value respectively. *Id*. at ¶ 39. The Valoe Plaintiffs also allege, in addition to their lead poisoning and resulting neuro-psychological deficits, that their injuries are "different in both kind and degree from the injuries suffered generally by the public." *Id*. at ¶¶ 83, 133.

  The Valoe Plaintiffs initially filed a complaint in this Court on May 3, 2011. *See* Valoe ECF No. 1. Like Mr. Gibson, the Valoe Plaintiffs never pled their claims on a consolidated complaint with other lead poisoning victims. The Valoe Plaintiffs also "sat on the sidelines" throughout the procedural and legal developments in other similarly situated WLC cases. The Valoe Plaintiffs have had no case-specific discovery or case-specific substantive motions occur in their case. Nonetheless, this Court sought to apply collateral estoppel and extend its summary judgment ruling in the *Burton*, *Owens*, and *Sifuentes* cases to the Valoe Plaintiffs.

*  *  *

After the Burton, Owens, and Sifuentes plaintiffs obtained trial verdicts in their favor in their respective WLC cases, the Seventh Circuit issued its ruling in *Burton II*.[4] Despite the plaintiffs' arguments that *Burton II*'s holding is inconsistent with established Wisconsin product liability precedent, this Court attempted to bind the Gibson and the Valoe Plaintiffs through issue preclusion on prior rulings carried over from the *Burton*, *Owens*, and *Sifuentes* cases. The Seventh Circuit found that application of collateral estoppel improper and remanded the Gibson and Valoe Plaintiffs back to this Court. *See Cannon*, 92 F.4th at 713. At the April 22, 2024 status hearing, and after remand from the Seventh Circuit, this Court granted Plaintiffs leave to amend their complaints in light of the various interpretations of Wisconsin product liability law that had occurred since their initial pleadings. *See Gibson Compl.*; *Valoe Third Am. Compl.*, 2:11-cv-00425-LA, ECF No. 385, May 7, 2024 ("Valoe Compl.")[5]. Plaintiffs now bring four causes of action against the Defendants: strict liability failure to warn, negligent failure to warn, ordinary negligence, and continuing public nuisance. *See id*. The Plaintiffs' negligence and strict liability causes of action are rooted from the risk-contribution remedies that were vested to the Plaintiffs, in accordance with Art. I, § 9 of the Wisconsin Constitution, in *Thomas*, 701 N.W.2d 523, and its progeny. Plaintiffs also brought new public nuisance claims against the Defendants for their creation of a public nuisance through their manufacture and marketing of WLC, lead paint's

---

[4]     *Burton II* found that (1) risk-contribution could only be applied to manufacturers of WLC, not manufacturers and marketers of the pigment, *see id*. at 812-3; (2) plaintiffs could not pursue a negligence claim predicated on a breach of the duty of ordinary care, *id*. at 817-19; and (3) plaintiffs' strict liability failure-to-warn claims required a showing that the Industry Defendants breached their duty to warn at the time that the plaintiff was injured, rather than the time the WLC was originally sold, *id*. at 821-24.

[5]     For this Court's convenience and reference, cites to the pleadings at-issue-here will be cited to the Valoe Complaint, though the *Gibson* and *Valoe* actions are separate and distinct.

interference with the public right to lead-free housing, and the specialized injuries suffered by the Plaintiffs stemming therefrom. *See id*.

## III.    THIS COURT'S PRIOR RULINGS ON WARNING CLAIMS

In 2018, this Court rejected the Burton, Owens, and Sifuentes plaintiffs' negligent failure to warn claims. *Burton v. Am. Cyanamid*, 334 F. Supp. 3d 949 (E.D. Wis. 2018) ("*Burton I*"). The Court concluded that the Defendants had no duty to warn plaintiffs Burton, Owens, and Sifuentes of the dangers of WLC, basing this holding on ***plaintiff-specific caregiver admissions*** that they were aware of the dangers of lead paint at the time of the injuries::

> [T]he defendants did not owe a duty to plaintiffs or their caregivers to warn them directly of the risks associated with WLC in residential paint. Plaintiffs are therefore foreclosed from pursuing negligence claims that rely on a duty to warn theory. Plaintiffs may, however, continue to pursue negligence claims based on the general duty of ordinary care.

*Id*. at 961.[6]

In the same ruling, however, this Court ruled that the Burton, Owens, and Sifuentes plaintiffs could proceed to trial on their strict liability failure-to-warn claims:

> [T]he strict liability failure to warn claim under *Thomas* does *not* require proof that the defendant owed and breached a duty *to the plaintiff*. The emphasis in strict liability is rather on the condition of the product at the time the manufacturers released it into the market . . . establishing the existence of a product defect based on failure to warn in the strict liability context requires analysis of what the manufacturer knew and what potential consumers or users knew about the hazards of the product at the time that the product left the manufacturer's control. The duty, in other words, is *not to the plaintiff*, it is a general duty owed at the moment of sale to potential users of the products, such that the breach of the duty becomes a characteristic of the product itself—a defect a quality of unreasonable dangerousness.

*Id*. at 966 (citing *Thomas*, 701 N.W.2d at 564).

---

[6]    Discovery into plaintiff-specific caregiver knowledge of lead paint's dangers at the time of Plaintiffs' injuries has not yet occurred here.

The Burton, Owens, and Sifuentes plaintiffs elected to proceed on solely on their ordinary negligence and strict liability failure to warn claims against the Defendants. After verdicts were issued in their favor, the Defendants appealed the verdicts, and the resulting *Burton II* ruling was interpreted by this Court as foreclosing WLC plaintiffs from proceeding under strict liability failure to warn and ordinary negligence theories of liability based on the proffered evidence at the time. *Burton II*, 994 F.3d at 812-24.

After the *Burton II* decision, the Defendants moved for summary judgment in all of the lead paint cases before this Court, and other plaintiffs moved for reconsideration of this Court's 2018 *Burton I* ruling dismissing negligent failure to warn claims.

## IV. REMAINING WLC PLAINTIFFS HAVE A PATH FORWARD ON LEAD DUST EVIDENCE

In support of the plaintiffs' motion for reconsideration of this Court's Summary Judgment Order, the plaintiffs offered new evidence which showed:

> While modern consumers were generally aware that lead was toxic and that the ingestion of paint chips containing lead could lead to lead poisoning, such consumers were not aware of the dangers posed by the lead dust that formed when paint on the home's surfaces deteriorated. Unlike paint chips, lead dust was virtually invisible, and studies in the 1970s began to show that young children picked up and carried the dust to their mouths during normal hand-to-mouth activities. The plaintiffs contend that, because in the 1990s and early 2000s the dangers of lead dust were not as well publicized as the dangers of lead chops or the general toxicity of lead-based paint, a jury could reasonably find that the defendants had reason to know that modern consumers required warnings to fully understand the dangers of [WLC]."

*Burton SMJ Order*, 588 F. Supp. 3d at 899

The plaintiffs pushing for reconsideration brought this dust evidence in light of the *Burton II*'s court's clear directive that WLC lead-poisoning claims under risk-contribution still have a path forward. *Burton II*, 994 F.3d at 825. Although this Court recognized that the plaintiffs had offered lead dust evidence which they contended "would allow a reasonable jury to find that,

although modern consumers may have been aware of some of the dangers of lead-based paint, they were not aware of a specific danger involving lead dust," *id.*, the Court refused to consider that evidence on procedural grounds, more specifically because it was evidence that ***those specific*** plaintiffs could have presented in opposition to the earlier summary judgment motion, *id.* at 901. The Gibson and Valoe Plaintiffs have pled allegations which incorporate much of the lead dust evidence discussed in this Order.

Because the other WLC plaintiffs submitted lead dust evidence in their respective litigations too late, this Court granted the Defendants' summary judgment motion and denied the motion for reconsideration put forth by plaintiffs in March 2022. *Id.* at 910; Reconsideration Order at *6. The Court then sought to apply its rulings to the Gibson and Valoe Plaintiffs through issue preclusion, which the Seventh Circuit found to be improper in *Cannon*.

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, this Court is required to view "all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013) (citing *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "the pleading standard Rule 8 announces does not require 'detailed factual allegations.'" *Id.* Rather, "[t]he sorts of conclusory allegations that the Court forsook in *Twombly* and *Iqbal* are those that go no further than, '[t]he defendant was negligent.'" *Coppe Healthcare Sols., Inc. v. Brightsky, LLC.*, 24-CV-88, 2024 WL 3291028, at *2 (E.D. Wis. July 3, 2024) (quoting *Iqbal*, 556 U.S. at 678).

This Court is permitted to take judicial notice of "matters of public records when ruling on a motion to dismiss." *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (citing *Gen. Elec. Cap.*

*Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)). Nonetheless, a Court's judicial notice of facts is limited to those that are "**(1) not subject to reasonable dispute** and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determine through sources who accuracy cannot be questioned." *Id.* (emphasis added).

## ARGUMENT

## I.    PLAINTIFFS HAVE ADEQUATELY PLED CLAIMS FOR NEGLIGENT AND STRICT LIABILITY FAILURE TO WARN

The Defendants breached their duty to warn, regardless of whether this Court assesses Defendants' duty at the time the paint was sold or at the time the Plaintiffs were injured. Under the Seventh Circuit's interpretation of the attachment of duty in *Burton II*, Plaintiffs have adequately pled that consumers were not generally aware of the dangers of lead dust during the time of Plaintiffs' respective injuries—allegations which this Court has previously found as an opportunity to "show that a reasonable jury could find that the defendants had reason to believe that consumers in the 1990s and early 200s were unaware of the dangers of lead dust, even if those same consumers were aware of the dangers of lead paint generally." *Burton SMJ Order*, 588 F. Supp. 3d at 899. Furthermore, consistent with Wisconsin law and the Wisconsin Supreme Court's holding in *Thomas*, Plaintiffs have adequately pled that Defendants held knowledge of the dangers of WLC paint and breached their duty at the time the product was sold.

### A.    Plaintiffs Stated Claims for Negligent and Strict Liability Failure to Warn at the Time Plaintiffs *Were Injured*.

Defendants can be found liable for Plaintiffs injures, as pled by Plaintiffs, under the Seventh Circuit's interpretation of Wisconsin product liability law in *Burton II*.

Plaintiffs have pled, and Plaintiffs experts in their respective cases will establish, that lead dust is the primary risk leading to lead poisoning in children of the Plaintiffs' generation. *See* Valoe Compl. at ¶ 17 ("Today the scientific community knows, however, that the most common source

of lead exposure in young children is lead dust that they swallow . . . ."). Yet the hidden dangers of lead dust were not generally known by ordinary consumers during the time period of Plaintiffs' respective exposures, nor were efforts to educate the public undertaken until the 2000s and still today. *See* Valoe Compl. at ¶ 69 ("Due to the general lack of public knowledge regarding the specific pathways of exposure to WLC, including lead dust, government entities, including the U.S. federal government, spent hundreds of millions of dollars on public educational campaigns throughout the 1990s, into the 2000s, and still today."). Additionally, because the consumers' lack of knowledge of lead dust's invisibility, "education remains a requirement for many lead poisoning prevention government grants and activities because it is widely recognized that public awareness is still inadequate and lead paint problems still remain poorly understood by the public." *See id*. at ¶ 81.

The Defendants, on the other hand, were aware of the hidden and specific dangers of lead dust well-before the scientific community, government agencies, and the consumers. *See* Valoe Compl. at ¶ 62 ("[T]he Defendants were aware that all lead-based paint will deteriorate over time, thus releasing dust, chips and particles into homes that are painted with WLC . . . ."); *see also id*. at ¶ 52 ("Each Industry Defendant also knew, since the early 20th century, that children could be poisoned form lead in dust . . . ."); *id*. at ¶ 65 ("According to Dr. Peter English, an expert previously retained by the Defendants, the first time house dust was mentioned as a *potential* source of childhood lead poisoning in *American medical literature* was not until 1974.").

These pleaded facts—including testimony from the WLC manufacturer defendants' own experts in prior proceedings—establishes that the Defendants had *no reason to believe* the dangers presented by invisible lead dust "would be contemplated by any ordinary consumer who has ordinary knowledge which is common to the community." *Est. of Schilling v. Blount, Inc.*, 449

N.W.2d 56, 59 (Wis. Ct. App. 1989). Defendants had a duty to warn of the dangers of lead dust known to them—dangers that were not known by consumers "in Plaintiffs' situation." *Burton*, 994 F.3d at 823.

The government warnings relied upon by Defendants—through which they seek this Court's "judicial notice"—do not alleviate them from their duty to warn of the dangers of WLC at the time of the Plaintiffs' injury. *See* Def. Br. at 7-13. While this Court can judicially notice the existence of some documents and what they say, "the content of the documents cannot be used for the truth of the matters asserted (as defendants use them in their motion to dismiss)." *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*, 13-C-1159, 2015 WL 1478565, at *4 (E.D. Wis. Mar. 31, 2015) (striking defendants' motion to dismiss because of its reliance on judicially noticed SEC exhibits for the truth of the matters asserted therein). Thus, any implications of this material's impact on Defendants' duty to warn creates a "reasonable dispute" of fact, making judicial notice at the Motion to Dismiss phase improper. *See Fosnight*, 41 F.4th at 922; *see also White v. Hefel*, 875 F.3d 350, 358 (7th Cir. 2017) (judicial notice of plea transcript with "hotly contested" factual allegations that "lay at the heart of the dispute" was improper) . The material offered by Defendants is invites this Court to wade into questions of fact and assess the truth of the contents contained therein. This is an improper use of judicial notice at the Motion to Dismiss phase, and the issues raised by the material  are better reserved for interpretation by experts and disposition during summary judgment.

Even if it were appropriate to consider the "judicially noticed" documents for the truth of the matter asserted therein, the documents do not mandate dismissal of the Plaintiffs' cases. *See, e.g.*, *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 483 (7th Cir. 2020) (consumer knowledge is a "question of fact that cannot be resolved on the pleadings"). Plaintiffs have credibly alleged

that Defendants had a duty to warn about the specific and hidden dangers of lead dust in the 1990s, 2000s, and beyond, and that consumers were not generally aware of the dangers of lead dust.[7] *See, e.g.*, Valoe Compl. at ¶¶ 17, 25. The government materials noticed by Defendants cannot offer any useful inferences for this Court other than the fact that the documents exist.

The duty question cannot be answered by the fact that consumers *generally* knew that lead is poisonous—or even that they knew that eating paint chips is dangerous—when Plaintiffs had adequately pled, and the evidence will show, that the Defendants knew of the specific, hidden dangers presented by invisible lead dust, and had no reason to believe that ordinary consumers would reasonably anticipate those dangers. Moreover, Plaintiffs' allegations that government action on lead dust in the 1990s and 2000s offers a counter-inference on the lack on consumer knowledge and for the reason government action on abatement, education, and public health initiatives regarding lead dust was needed. *See, e.g.*, Valoe Compl. at ¶¶ 69, 73 (government regulations requiring landlords to warn of lead dust in 1996 "sufficiently demonstrates the dangers of lead paint, including lead dust, were not well known to the general public in the 1990s, and are still not generally understood"). Plaintiffs' pleadings are replete with allegations which demonstrate a plausible claim, one warranting further factual discovery, as to ordinary consumers' knowledge of lead dust during the time-periods Plaintiffs were injured. *See, e.g.*, *id.* at ¶ 66.

---

[7]    The Wisconsin Supreme Court noted the "more common" dangers of lead dust in *Thomas*. 701 N.W.2d at 533 ("[A] child does not have to eat paint chips to become poisoned. It is more common for children to ingest dust and soil contaminated with lead from paint that either has flaked or chalked as it aged or has been otherwise disturbed during home maintenance or renovation.").

### B. Plaintiffs Stated Claims for Negligent and Strict Liability Failure to Warn at the Time the *WLC Products Were Sold*.

Plaintiffs' complaints also demonstrate that Defendants breached their duty to warn at the time the WLC products were sold. Plaintiffs maintain that, under Wisconsin law, consumer knowledge at the time of the WLC Products' sale is the correct time period for determining when Defendants' duty was breached, notwithstanding the Seventh Circuit's decision in *Burton II*.

In Wisconsin, strict liability claims are determined in accordance with Restatement (Second) of Torts § 402. *See generally Dippel v. Sciano*, 155 N.W.2d 55 (Wis. 1967). In order to establish liability under Section 402A, a plaintiff must prove, *inter alia*, "that the product was in defective condition *when it left the possession or control of the seller*." *Id.* at 63 (emphasis added). *Thomas* reiterated this point, requiring the plaintiff to prove that "the [WLC] was defective *when it left the possession or control of the pigment manufacturers*." 701 N.W.2d at 564 (emphasis added). Thus, Wisconsin courts evaluate the need for a warning under strict liability based on consumer knowledge *at the time the product is sold*. *Cf. Horst v. Deere & Co.*, 769 N.W.2d 536, 543 (Wis. 2009) ("This standard requires manufacturers to anticipate what consumers will expect, and to take safety precautions in accordance with those expectations [which] might include . . . adequate . . . warnings.").

The analysis of the duty to warn in negligence is similar. In Wisconsin, "a manufacturer . . . of a product has a duty to exercise ordinary care to warn of dangers which he or she knows, or should know, are associated with the proper use of a product." *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 613 N.W.2d 142, 154 (Wis. 2000) (quoting Wis. JI-Civil 3242); *see also id.* at 154-55 (quoting § 388) (jury instructions addressing the duty of a manufacturer to warn in negligence actions).

Section 388 fits the facts of these cases perfectly. The Defendant manufacturers sold WLC and/or paint containing WLC, expecting that purchasers would use the WLC for residential purposes, thereby endangering themselves and all future occupants of the residences. Defendants knew at the time that WLC was dangerous, that the danger would linger because WLC would remain in the homes for decades to come, and that both the consumers who purchased WLC and/or paint containing WLC and also persons residing in those homes over those decades were unlikely to be fully aware of the danger. *See* Valoe Compl. at ¶¶ 49, 50, 52.

This conclusion—that the duty to warn arises ***at the time that the product is sold***—is supported by additional Wisconsin authority. Except in very limited circumstances not applicable here, Wisconsin law does not recognize a post-sale duty to warn. *See generally Kozlowski v. John E. Smith's Sons Co.*, 275 N.W.2d 915 (Wis. 1979); *Olsen v. Ohmeda, Div. of BOC Grp., Inc.*, 863 F. Supp. 870 (E.D. Wis. 1994). Thus, under Wisconsin law, the duty to warn must exist at the time the product is sold, and not at the time of injury which would necessarily be post-sale. As a result, *Burton II*'s holding that Defendants' duty turns on what the Plaintiffs and their caregivers knew about the dangers of WLC paint at the time of injuries, imposes the very post-sale duty to warn that has been rejected by Wisconsin Courts. This conclusion simply cannot be reckoned with *Thomas* or Wisconsin precedent. Furthermore, the Plaintiffs anticipate that these Defendants will assert as an Affirmative Defense here that they cannot be held liable because Wisconsin does not recognize a post-sale duty to warn, as they have in similar state court proceedings. *See* Amended Answer and Affirmative Defenses of The Sherwin-Williams Company to Plaintiff's Amended Complaint, *Beal v. Hattie Mitchell, et al.*, Case No. 2021-CV-003276, Milwaukee County Circuit Court, Jan. 1, 2024, at ¶ 81, attached as Exhibit A ("Sherwin-Williams alleges that Wisconsin does not recognize a post-sale duty to warn applicable here . . ."). Their position here – that the duty

arises post-sale at the time the Plaintiffs were injured – cannot be reconciled with their stated position in similar litigation that no such duty exists under law.

Defendants' knowledge of the dangers of WLC and the subsequent breaching of their duty at the time the WLC products were sold are well-pled in Plaintiffs' complaints. Indeed, Plaintiffs allege that "[e]ach Industry Defendant knew and/or should have known that since at least the early 1900's that [WLC] pigments are hazardous to human health." *See* Valoe Compl. at ¶ 49; *see also id*. (citing Sherwin-Williams, ARCO, and EIDP statements about WLC's dangerous toxicity, dating back to 1881). Accordingly, Plaintiffs have sufficiently pled actions for negligent and strict liability failure-to-warn regardless of when Defendants' duty attached. Defendants failed to provide warnings of those risks at any point—from time of sale until when the Plaintiffs were injured—thereby demonstrating a lack of reasonable care.

## II.  PLAINTIFFS' GENERAL NEGLIGENCE CLAIMS ARE RECOGNIZED BY WISCONSIN LAW

In *Thomas*, the Wisconsin Supreme Court expressly recognized the viability of an ordinary negligence claim ***without*** a showing of a product defect. *Thomas*, 701 N.W.2d at 320. This holding on ordinary negligence in risk-contribution is consistent with accepted Wisconsin negligence law, where liability lies when either "the method employed was undertaken with *a lack of ordinary care **or** the product was defective*." *Greiten v. LaDow*, 70 Wis. 2d 589, 602, 235 N.W.2d 677, 685 (Wis. 1975) (emphasis added). Product defect is not the exclusive route to recovery under negligence; a jury may also find negligence where the defendant's conduct simply did not satisfy its duty of ordinary care.[8] As Wisconsin Supreme Court Justice Heffernan's controlling

---

[8]      For example, a manufacturer may breach its duty of ordinary care by marketing a product for a specific use it knows would create an unreasonable risk of harm, without any proof of defect.

concurrence[9] in *Greiten* explained, the product defect concept of strict liability law is not a precondition for recovery in negligence:

> While I completely agree with the majority opinion that the proof [of negligence] was insufficient, I am satisfied that *the threshold question is not whether the product was unreasonably dangerous but whether the defendant exercised ordinary care* and whether that lack of ordinary care was the legal cause of the injuries. . . . We look in the ordinary negligence case not only to the result of the defendant's action, but rather to his conduct in attaining that result. *It is, accordingly, erroneous to conclude that the threshold question in each case [strict liability and negligence] is whether the product is dangerously defective.*

*Id.* at 686 (emphasis added). The Seventh Circuit's holding in *Burton II* that the failure to exercise ordinary care cannot establish negligence—and that a "defect" must be shown—in a products liability case simply cannot be squared with the Wisconsin Supreme Court's holding in *Greiten*.[10]

There is no Wisconsin law that provides product manufacturers immunity from negligence liability for conduct that foreseeably injures innocent consumers and future residents of homes with WLC-paint on the walls, separate and apart from a defect in the product itself.[11] Thus, the Defendants can be liable in negligence for breaching their "duty of ordinary care," a "legally recognized duty" as required by *Thomas*. Whether the product was *also* "defective" is not a question that must be answered because *Thomas* excluded that requirement from the elements

---

[9]    As later explained in *Howes v. Deere & Co.*, 71 Wis. 2d 268, 274, 238 N.W.2d 76, 80 (1976), although *Greiten* identifies Justice Heffernan's opinion as a concurrence, "[t]he opinion, in fact, represents the decision of a majority of the court and it is, therefore, the opinion of this court."

[10]    Subsequently, in *Sharp ex rel. Gordon v. Case Corp.*, the Wisconsin Supreme Court declined to overrule Justice Heffernan's distinction between negligence and strict product liability regarding whether a plaintiff needs to show that a product is dangerously defective. 227 Wis. 2d 1, 18-19, 595 N.W.2d 380, 387-88 (Wis. 1999) (acknowledging the argument by "courts in other jurisdictions and commentators" that "both strict liability and negligent design depend on the existence of a defective product" but "declin[ing] at this time to reconsider and overrule the long-standing precedent of *Greiten*").

[11]    Likewise, there are no published cases in Wisconsin that *limit* a manufacturer's liability in negligence to injuries narrowly attributable to the three categories of strict product liability.

required for negligence under risk-contribution. 701 N.W.2d at 320. And the *Thomas* court extensively discussed the culpability of the defendants for creating the risk of harm to lead poisoned children in the context of their marketing and promotional activity, without any discussion of product defect. *Id*. at 262-68, 278-80, 283-84.

For these reasons, Plaintiffs' ordinary negligence claims, pled consistently with *Thomas*, against the Defendants should not be dismissed.

## III. PLAINTIFFS HAD LEAVE OF COURT TO ASSERT THEIR PUBLIC NUISANCE CLAIMS

At the April 22, 2024, this Court granted Plaintiffs leave to amend their respective complaints following the significant procedural and legal developments that had occurred in similarly situated WLC cases. Plaintiffs submitted the amended complaints at issue here that, inter alia, added public nuisance claims. Courts routinely permit the inclusion of new claims in amended complaints, finding that new causes of action in an amended complaint that are "based on factual allegations that long have been part of the case does not cause undue prejudice to the defendants." *See Dixon v. Jefferson Cap. Sys., LLC*, No. 119CV02457JMSDML, 2021 WL 4943060, at *1 (S.D. Ind. July 13, 2021) (citing *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 428 (7th Cir. 2005)); *see also Aida Eng'g, Inc. v. Red Stag, Inc.*, 629 F. Supp. 1121, 1127 (E.D. Wis. 1986) ("Leave to amend may not be denied merely because the proposed amendment introduces a new cause of action or defense."). Here, Defendants have not demonstrated any prejudice resulting from the inclusion of Plaintiffs' public nuisance claims. The underlying factual allegations in Plaintiffs' amended complaints still predominately arise out of the same sequence of events and transactions as prior iterations. Plaintiffs' pleading of additional causes of action is properly within the leave this Court granted for amendment.

## IV. PLAINTIFFS' HAVE PLED VALID PUBLIC NUISANCE CLAIMS

"A public nuisance is a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 646 N.W.2d 777, 788 (Wis. 2002). To establish a claim for a public nuisance, which Plaintiffs have alleged against the Defendants, "a plaintiff must prove that the defendant's conduct was a substantial cause of the existence of a public nuisance and that the nuisance was a substantial factor in causing injury to the public, which injury is the subject of the action." *City of Milwaukee v. NL Indus., Inc.*, 691 N.W.2d 888, 892 (Wis. App. 2004) ("*City of Milwaukee I*"). A private individual bringing a public nuisance claim, such as the Plaintiffs here, "must have suffered harm of a kind different from other members of the public who exercised that common right." *Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 835 N.W.2d 160, 171 (Wis. 2013).

The Defendants' mass manufacture and marketing of WLC pigments have resulted in a continuing public nuisance in the Milwaukee-area. The City of Milwaukee has recognized lead-based paint to be a public nuisance. Lead-based paint and the hazards stemming therefrom has interfered with the public right to lead-free, safe residential housing. Plaintiffs—who were poisoned as children by WLC-based paint in Milwaukee—are entitled to bring a public nuisance actions for the different and specialized harm they suffered as a result of their lead poisonings, distinguishing their harm from other Milwaukee residents who lived in residential housing containing lead but were not lead poisoned as children.[12] Plaintiffs have pled these allegations, as

---

[12] As mentioned above, *see supra* n.2, Plaintiffs are electing not to proceed on their request for abatement. Plaintiffs seek to solely recover damages and costs for the public nuisance caused by Defendants. As a result, a response to Defendants' arguments as to standing for abatement and joining necessary parties for injunctive relief is no longer necessary.

well as the underlying negligent and intentional conduct causing the public nuisance, consistent with Wisconsin public nuisance law. Plaintiffs' public nuisance claims should stand.

### A. Ensuring Children, Who Are Particularly Susceptible to Lead Poisoning, Live in Lead- Free Housing a Cognizable Public Right.

"Wisconsin has explicitly adopted the definition of private nuisance found in the Restatement (Second) of Torts § 821. Wisconsin's definition of public nuisance also comports with the Restatement (Second) of Torts § 821B." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 691 N.W.2d 658, 658 (Wis. 2005). The Restatement (Second) of Torts offers a broad interpretation of what can constitute a public nuisance, setting forth circumstances in which interference with a public right could give rise to liability of a public nuisance:

> (a) Whether the conduct involves significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
>
> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
>
> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

Restatement (Second) of Torts § 821B(2); *see also Milwaukee Metro. Sewerage Dist.*, 691 N.W.2d at 670 (adopting Restatement (Second) of Torts § 821B's definition of a public nuisance as "an unreasonable interference with a right common to the general public").

WLC paint poisoning children, such as Plaintiffs, in Milwaukee residential housing is an interference of a public right. *City of Milwaukee I,* 691 N.W.2d at 892 (recognizing childhood lead poisoning as a community-wide public nuisance in Milwaukee); *State v. Michels Pipeline Constr., Inc.*, 217 N.W.2d 339, 342 (Wis. 1974), *op. supplemented on reh'g*, 219 N.W.2d 308 (1974) ("[I]t is not necessary, however, that the entire community be affected, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right.") (quotations omitted). Injuries in private residences can also constitute an interference with a public right. *See*

*id.* ("[A]ny condition or activity which substantially interferes with private interests of any considerable number of individuals in a community is very like to interfere also with some public right …") (quotations omitted). Other courts have found that residential lead paint constitutes an interference with a community's public right to housing that does not poison children. *See People v. ConAgra Grocery Prods. Co.*, 227 Cal. Rptr. 3d 499, 552 (Cal. Ct. App. 5th 2017) (rejecting paint manufacturers' argument that interior residential lead paint "does not interfere with any 'public right' because it causes only private harms in private residences"). In *People v. ConAgra Grocery Products Co.*, the Court of Appeals for the Sixth District of California found that interior residential lead paint that is in dangerous condition—such as the condition of the WLC paint that Plaintiffs here allege cause their lead poisonings—"does not merely pose a risk of private harm in private residences." *Id.* Because of a community's collective social interest in the safety of children in housing, "interior residential lead paint interferes with the community's 'public right' to housing that does not poison children." *Id.*

Indeed, just as the court's recognition of a collective interest to avoid causing grave harm to the physical health of a community's children in *ConAgra*, Plaintiffs here and their community likewise have an interest in avoiding lead paint's interference with their public rights to livable and safe residential housing. *See id.* ("[W]e do not accept defendants' claim that, unlike streets residential housing is not a shared community resource. Residential housing, like water, electricity, natural gas, and sewer services, is an essential community resource. Without residential housing, it would nearly be impossible for the 'public' to obtain access to water, electricity, gas, and sewer services."). Plaintiffs' public right and community interest to live in lead-free housing is further endorsed by the City of Milwaukee's ordinance directly prohibiting "lead-based nuisance[s]" in residential living spaces. *See* City of Milwaukee Ordinance § 66-22 ("No owner or person may

create or knowingly allow to exist in or on their property any lead-based nuisance."). Further, Milwaukee Ordinance § 66-21(15) defines a lead-based nuisance as "any lead based substance, surface or object which may reasonably contribute to an elevated blood lead level due to lead content, condition, or location and which is accessible to children and is declared a public health nuisance." This ordinance for Plaintiffs' purposes, despite Defendants' statutory interpretation of its full effect, demonstrates that lead-paint in residential homes constitutes an infringement on a public right; the continuance of which is violative of the collective interest in lead-free housing in Milwaukee and constitutes a public nuisance.

Further, as demonstrated below, *see infra* at IV, C, Plaintiffs' allegations of suffering special injuries as a result of the Defendants' lead-based public nuisance demonstrates their injuries stem from interference with a public right.

**B.    The Underlying Tortious Conduct Required for a Public Nuisance Claim was Adequately Pled.**

Through pleading three separate causes of action (strict liability failure to warn, negligent failure to warn, and negligence), Plaintiffs have defined the necessary tortious conduct underpinning their public nuisance claims. As demonstrated above, Wisconsin law and *Thomas* recognizes actionable claims against the Defendants for their "underlying tortious activities"—*i.e.*, the impacts of childhood lead poisoning stemming from the Defendants' negligent and reckless or intentional conduct in its "massive production, promotion and marketing of lead paint and/or white lead carbonate pigment for residential use in the City of Milwaukee." *See, e.g.*, Valoe Compl. at ¶ 128.

The Wisconsin Supreme Court has characterized a cause of action in nuisance as being "predicated upon a particular type of injurious consequence, not the wrongful behavior causing the harm." *Milwaukee Metro. Sewerage Dist.*, 691 N.W.2d at 669. The first requisite step in

24

assessing Plaintiffs' nuisance claims require "proof of the particular harm that defines a nuisance—the interference . . . with a public right." *Id*. at 670. Plaintiffs have accordingly pled that the WLC hazards created by Defendants constitute a public nuisance in Milwaukee. *See, e.g.*, Valoe Compl. at ¶ 127.

A public nuisance can arise either by negligent or intentional conduct. *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 646 N.W.2d 777, 793-94 (Wis. 2002). A public nuisance "does not require proof that the defendant had actual or constructive notice of the hazardous condition." *Id*. at 790 n.19. "[W]hen a nuisance is predicated on negligence, all the usual rules and defenses applicable to negligence claims apply." *Milwaukee Metro. Sewerage Dist.*, 691 N.W.2d at 665; *see also Jost v. Dairyland Power Co-op.*, 172 N.W.2d 647, 650 (Wis. 1969) ("[N]egligence is merely one type of conduct which may give rise to a nuisance.") (quoting Prosser, Law of Torts (Third), § 88 (*Nuisance*)). Nonetheless, a negligence-based nuisance claim must contain allegations of negligence, otherwise the "plaintiff adds nothing to the sufficiency of the complaint by his allegations of nuisance." *Milwaukee Metro. Sewerage Dist.*, 691 N.W.2d at 667.

Here, Plaintiffs have adequately alleged that the Defendants' creation of a public nuisance was created by Defendants' negligence or their intentional conduct. *See* Valoe Compl. ¶ 128 ("Each Defendant knew or should have known that its conduct would cause a substantial hazard to the children of the City. The conduct of each of the Defendants was a substantial factor in creating this public nuisance, and that nuisance, in turn, was a substantial factor in causing injury to the public, including the specialized harms suffered by Plaintiffs. . . ."); *see id*. at 100-24 (negligence and negligent failure-to-warn counts against Defendants). Indeed, the same factual allegations underpinning Plaintiffs' negligence claims, including Defendants' early knowledge of the dangers of WLC, also give rise to Plaintiffs' nuisance claims. Plaintiffs have pled the necessary

actionable underlying tortious conduct for their public nuisance claims to get beyond the relief the Defendants seek here.

### C. Plaintiffs Suffered Specialized Injuries from Defendants' Public Nuisance, Giving Them Standing to Sue for Damages.

Defendants improperly reduce their liability from the manufacture of known hazards of lead paint and its noxious nature to being actionable solely through personal injury claims. This is inconsistent with established public nuisance precedent and Wisconsin law.

Plaintiffs fit in the class of persons entitled to bring public nuisance claims as private individuals. In order for a private individual to recover for a public nuisance, they "must have suffered harm of a kind different from other members of the public who exercised that common right." *Bostco LLC*, 835 N.W.2d at 171. Wisconsin Statutes, §§ 823.01 and 823.03 also authorize Plaintiffs, as private individuals to bring an action both to recover damages for and to abate a public nuisance. *See* Wis. Stat. 823.01 ("Any person . . . may maintain an action to recover damages or to abate a public nuisance from which injuries peculiar to the complainant are suffered . . . "). Plaintiffs' public nuisance claims are consistent with other applications of public nuisance asserted by individuals for recovery. Plaintiffs' assertion of public nuisance causes of action is also consistent with comment b of the Restatement (Second) of Tort's instruction that:

> [a] private individual can recover in tort for a public nuisance only if he has suffered harm of a different kind from that suffered by other persons exercising the same public right. It is not enough that he has suffered the same kind of harm or interference but to a greater extent or degree.

Restatement (Second) of Torts § 821C, cmt. b.

Plaintiffs properly pled that they had suffered "special injur[ies]" that are "of a kind different from other members of the public." *Bostco*, 835 N.W.2d at 171; *see, e.g.*, Valoe Compl. at ¶ 128 ("The conduct of each of the Defendants was a substantial factor in creating this public nuisance, and that nuisance, in turn, was a substantial factor in causing injury to the public,

*including the specialized harms* suffered by Plaintiffs resulting therefrom.") (emphasis added).

Plaintiffs' actions are not to "provide individual remedies for similar harms to large numbers of

identifiable individuals" such as through a class action, *City of Milwaukee I*, 691 N.W.2d at 893,

but rather to remedy their specific injuries directly caused by the Defendants' interference with the

public right to lead-free residential housing.

　　The Plaintiffs each suffered distinct, special injuries and sequelae as a result of the lead-

based nuisance propagated by the Defendants. Namely, Mr. Gibson and the Valoe Plaintiffs

suffered from elevated blood lead levels which have caused neuro-psychological deficits and

impairment of the Plaintiffs' abilities to learn, live and enjoy life. *See, e.g.*, Valoe Compl. at ¶ 83.

These injuries are "of a kind different from other members of the public." *Bostco*, 835 N.W.2d at

171.

　　The harm suffered by the Plaintiffs here is different from the harm suffered by the greater-

Milwaukee area at-large. Not all community members who have lead-paint on their walls are

exposed or ingest lead or white lead carbonate. Not all community members in residences built

pre-1978 had deteriorating white lead carbonate in their residences. And not all community

members whose public rights were afflicted by the ongoing nuisance of lead paint are children

who were lead poisoned, with blood lead levels exceeding the CDC's blood reference value.

Plaintiffs, however, did suffer the specialized injury of lead poisoning as a result of the Defendants'

continuing nuisance. Plaintiffs are not precluded from proceeding on their public nuisance claims

because they may fall into a class of individuals who have also suffered special injuries from lead-

based nuisance created by the Defendants. *See Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 392

(E.D.N.Y. 2004) (When interpreting the viability of a shooting victim's public nuisance claim

against gun manufacturers and distributors, "[t]he fact that multiple persons are injured does not

make the nuisance such a common one as to exclude redress by a private individual; an action may be maintained by one who is not the sole sufferer when the grievance is not common to the whole public, but is shared by a number or even a class of persons.").

In *Ileto v. Glock Inc.*, survivors of a shooting in California brought public nuisance and negligence actions against multiple gun Defendants that were involved in the manufacture, marketing, and distribution of firearms found in the shooter's possession. 349 F.3d 1191, 1194 (9th Cir. 2003). The plaintiffs alleged that the gun industry members interfered with public rights including "the public health, the public safety, the public peace, the public comfort or public convenience." *Id*. at 1211. The Ninth Circuit determined that the plaintiffs' injuries—either through being shot or the emotional injury of witnessing the shooting—were injuries "different in kind from the general public." *Id*. at 1212. The Ninth Circuit distinguished these special injuries from the "danger, fear, inconvenience, and interference with the use and enjoyment of public places that affect the tenor and quality of everyday life" suffered by the general public as a result of gun industry's gun manufacture and distribution practices. *Id*.

The Ninth Circuit's interpretation of the requisite special harm deriving from personal injuries in *Ileto* is also consistent with the Plaintiffs' specialized harm here. Like the plaintiffs in *Ileto*, Mr. Gibson and the Valoe Plaintiffs sustained lead poisoning from their ingestion of white lead carbonate while infants—an injury that is different in kind from the harm suffered by the general public. Plaintiffs' specialized harms are adequately pled.

The Defendants seek to sow confusion by conflating Plaintiffs' public nuisance claims with personal injury claims. Plaintiffs are entitled to seek relief through both personal injury and public nuisance actions. Public nuisance claims stemming from personal injuries have long been recognized as permissible. Prosser, *Private Action for Public Nuisance*, 52 Va. L.Rev. 997, 1012

(1966) ("T]here can be no doubt that the nuisance action can be maintained where a public nuisance causes physical injury."); Restatement (Second) of Torts § 821C cmt. d ("When the public nuisance causes personal injury to the plaintiff or physical harm to his land or chattels, the harm is normally different in kind from that suffered by other members of the public and the tort action may be maintained."). As a result, Plaintiffs' public nuisance claims properly arise out of Plaintiffs' specialized physical injuries sustained as a result of Defendants' interference with the public right to lead-free residential housing.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss Plaintiffs' Amended Complaints.

Date: September 6, 2024

Respectfully Submitted,

By: */s/ Fidelma L. Fitzpatrick*

FIDELMA L. FITZPATRICK, ESQ.
**MOTLEY RICE, LLC**
40 Westminster St., 5th Fl.
Providence, RI 02903
Telephone: (401) 457-7728
Facsimile: (401) 457-7708
ffitzpatrick@motleyrice.com

NICHOLAS V. WILLIAMS, ESQ.
(PHV FORTHCOMING)
**MOTLEY RICE, LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: (843) 216-9133
Facsimile: (843) 216-9450
nwilliams@motleyrice.com

LOUIS M. BOGRAD, ESQ.
 (PHV FORTHCOMING)
**MOTLEY RICE, LLC**
401 9th Street NW, Suite 630
Washington, DC 20004
(202) 386-9623

lbograd@motleyrice.com


PETER G. EARLE, ESQ.
LAW OFFICES OF PETER EARLE
839 N. Jefferson Street, Suite 300
Milwaukee, WI 53202
Telephone: (414) 276-1076
peterearle1950@gmail.com

VICTOR C. HARDING, ESQ.
WARSHAFSKY, ROTTER, TARNOFF &
BLOCH
839 N. Jefferson Street, Suite 300
Milwaukee, WI 53202
Telephone: (414) 276-4970
vich@warshafsky.com


*Attorneys for Plaintiffs*