# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ERNEST GIBSON,**
       **Plaintiff,**

  v.                                                                         Case No. 07-C-0864

**AMERICAN CYANAMID CO., et al.,**
       **Defendants.**

_____

**DEZIREE VALOE and**
**DETAREION VALOE,**
       **Plaintiffs,**

  v.                                                                         Case No. 11-C-0425

**AMERICAN CYANAMID CO., et al.,**
       **Defendants.**

_____

## DECISION AND ORDER

The three plaintiffs in these two related actions seek damages for personal injuries caused by lead poisoning. The defendants were manufacturers of white lead carbonate, a pigment used in many lead-based paints for much of the twentieth century. During prior proceedings, I granted plaintiffs leave to file amended complaints. After they did so, defendants filed motions to dismiss the amended complaints under Federal Rule of Civil Procedure 12(b)(6). Because the amended complaints and the motions to dismiss are materially identical, I address them together in this order.

### I. BACKGROUND

Plaintiffs Ernest Gibson, Deziree Valoe, and Detareion Valoe allege that, while they were children, they resided in homes in the City of Milwaukee that contained lead paint. Gibson alleges that, in 1997, his family moved into a home built before 1978, and

that, beginning in June 1999, he "sustained lead poisoning by ingesting white lead carbonate derived from intact accessible painted surfaces, paint chips, paint flakes and dust that were derived from paints and coatings in and on the residence." (Gibson Am. Compl. ¶ 38.) Gibson alleges that his lead poisoning caused severe and permanent injuries. (*Id.* ¶ 83.) Deziree and Detareion Valoe are siblings who allege that, in the mid-2000s, their family lived in a residence in the City of Milwaukee that was built before 1978. (Valoe Am. Compl. ¶¶ 2–3.) They allege that, after they were born on July 14, 2006, they were exposed to and ingested white lead carbonate that derived from the paint on the home's surfaces. (*Id.*) They allege that they became lead poisoned and have suffered severe and permanent injuries as a result. (*Id.* ¶ 83.)

In 2005, the Wisconsin Supreme Court decided *Thomas ex rel. Gramling v. Mallett*, 285 Wis. 2d 236 (2005), and adopted a "risk contribution" theory of liability for plaintiffs suing manufacturers of white lead carbonate. This theory modifies the ordinary causation element of a negligence or strict-liability claim, under which a plaintiff must prove that a specific defendant caused his injury. Instead, liability is apportioned among the pool of defendants who could have caused the injury. In the wake of *Thomas*, many plaintiffs filed suits against manufacturers of white lead carbonate to recover for personal injuries caused by childhood lead poisoning. Those suits alleged theories of negligence and strict liability under Wisconsin law. Between 2007 and 2011, many such suits were either commenced in a Wisconsin state court and removed to this court by the manufacturers or filed in this court directly under the diversity jurisdiction. I have presided over many of these suits, which originally involved more than 170 plaintiffs. Throughout years of litigation, both this court and the Court of Appeals for the Seventh Circuit have issued

2

decisions on many procedural and substantive issues that arose in the cases. As is relevant to the present motions, I decided motions for summary judgment in which the manufacturers argued that certain plaintiffs lacked evidence to support various elements of their negligence and strict-liability claims. *See Allen v. American Cyanamid*, 527 F. Supp. 3d 982 (2021); *Burton v. American Cyanamid*, 334 F. Supp. 3d 949 (E.D. Wis. 2018). Further, three plaintiffs went to trial and prevailed on certain claims, and the manufacturers appealed. The Seventh Circuit then issued a decision that addressed various substantive issues relating to the negligence and strict-liability claims of a lead-paint plaintiff under Wisconsin law. *See Burton v. E.I. du Pont de Nemours and Co.*, 994 F.3d 791 (7th Cir. 2021).[1] Following the Seventh Circuit's decision, the manufacturers argued that the remaining plaintiffs' claims—including the claims of the plaintiffs in the present cases—should be dismissed based on both the court's ruling and my prior rulings on other issues. I agreed with the manufacturers and dismissed the claims of the remaining plaintiffs under the doctrines of law of the case and issue preclusion. *See Burton v. American Cyanamid Co.*, 588 F. Supp. 3d 890 (E.D. Wis. 2022). The Seventh Circuit affirmed that decision in part and reversed in part. *See Cannon v. Armstrong Containers Inc.*, 92 F.4th 688 (7th Cir. 2024). The part reversing my decision preserved the claims of the Gibson and Valoe plaintiffs on the ground that they were not bound by the results of the litigation involving other plaintiffs under the doctrines of law of the case and issue preclusion. All plaintiffs in this latest appeal to the Seventh Circuit—including

---

[1] Although there are several *Burton* opinions that are relevant to this opinion, when I refer specifically to the Seventh Circuit's *Burton* decision, I mean the Seventh Circuit decision cited in the text accompanying this footnote.

the Gibson and Valoe plaintiffs—also invited the court to reconsider some of the substantive rulings it made in the *Burton* appeal. *Id.* at 714–15. The Seventh Circuit declined that invitation. *Id.*

Following the Seventh Circuit's latest remand, Gibson and the Valoe plaintiffs requested leave to file an amended complaint. I granted them such leave, and plaintiffs have each filed an amended complaint. Each alleges a single claim for damages to compensate for personal injuries caused by exposure to lead paint. The complaints are organized into four causes of action, with each cause of action identifying a different legal theory supporting the claim for damages: (1) strict liability failure to warn, (2) general negligence, (3) negligent failure to warn, and (4) public nuisance. The first three theories had previously been advanced by the Gibson and Valoe plaintiffs and by all plaintiffs in the other lead-paint cases. Several of my prior decisions addressed the merits of those theories, as did the Seventh Circuit's opinion in *Burton*. However, the public nuisance theory is new. Here, plaintiffs allege that "[c]hildhood lead poisoning as a result of the use of residential paint containing white lead carbonate pigments is a community-wide public nuisance in Milwaukee." (Gibson Am. Compl. ¶ 127.[2]) Plaintiffs allege that the defendant manufacturers created this public nuisance, and that the nuisance caused their personal injuries. (*Id.* ¶ 128.) Plaintiffs allege that the same damages they seek in connection with their negligence and strict-liability theories are recoverable under the public nuisance theory. Plaintiffs also request an order requiring defendants to abate the public nuisance.

---

[2] The Gibson and Valoe complaints are virtually identical except as to the facts unique to each plaintiff. For brevity, when citing allegations that appear in both complaints, I will cite to the Gibson complaint only.

However, in response to defendants' motions to dismiss the abatement allegations, plaintiffs withdrew their requests for abatement. (Br. in Opp. at 21 n.12.) Thus, as things stand, the public nuisance theory is only an alternative legal theory supporting each plaintiff's single claim for damages.

As noted, defendants filed motions to dismiss the amended complaints under Rule 12(b)(6). I address those motions below.

## II. DISCUSSION

### A. Rule 12(b)(6) Standards

I usually begin my discussion of a Rule 12(b)(6) motion by summarizing the familiar pleading requirements of giving the defendant fair notice of the claim and stating a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, defendants do not contend that they lack fair notice of plaintiffs' claims or that their claims are implausible. Indeed, we have been litigating these exact claims for more than seventeen years. Instead, defendants contend that it can be determined from the face of the complaint (and, as we'll see, certain judicially-noticeable documents) that plaintiffs' four legal theories all fail as a matter of law. Although this is a proper use of a Rule 12(b)(6) motion, *see Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989), a court must be careful not to demand too much of a plaintiff at the pleading stage, *see Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022). A complaint does not need to plead legal theories in the first place, *id.*, does not need to plead facts corresponding to each element of a legal theory, *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017), and does not need to plead all the facts a plaintiff would need to produce to defeat a motion for summary judgment, *Graham v. Bd.*

5

*of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021). "It is enough to plead a plausible claim, after which 'a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Chapman*, 875 F.3d at 848 (quoting *Twombly*, 550 U.S. at 563). Here, because plaintiffs' claims are concededly plausible, defendants' burden is to show that either: (1) a question of law underlying one or more of plaintiffs' legal theories must be resolved against plaintiffs; or (2) given what's in the complaint and the judicially-noticeable documents, a reasonable trier of fact could not possibly find in plaintiffs' favor.

With these standards in mind, I turn to defendants' arguments for dismissing each legal theory.

**B.    Theories Based on Failure to Warn**

In their first and third causes of action, plaintiffs assert negligence and strict-liability theories based on defendants' failure to warn consumers about the dangers of lead poisoning associated with lead-based paint. To prevail on these claims, plaintiffs must prove that defendants had a duty to warn consumers about the dangerous nature of their products. For such a duty to exist, the manufacturer must have had no reason to believe that those for whose use the product is supplied will realize its dangerous condition. *See Strasser v. Transtech Mobile Fleet Serv., Inc.*, 236 Wis. 2d 435, 460–61 (2000). Whether the manufacturers of white lead carbonate had reason to believe that consumers would realize the dangers of lead paint was addressed in prior proceedings in both this court and the Seventh Circuit. The problem addressed in the prior cases, and which remains relevant to the present cases, is twofold: (1) *who* are the consumers who matter for purposes of determining whether the manufacturers had reason to believe that they were already aware of the dangers of lead paint, and (2) *what* did the manufacturers have

6

reason to believe about the state of their knowledge? The "who" element is temporal: are the consumers whose knowledge matters those who existed when defendants put their products on the market (*i.e.*, those who purchased lead paint prior to 1950), or those who encountered lead paint at the time plaintiffs were injured in the 1990s and early 2000s (such as plaintiffs and their caregivers)? The "what" element, in turn, asks what the manufacturers had reason to know about the state of knowledge of the relevant "who" group.

Prior to the Seventh Circuit's decision in *Burton*, I had concluded in litigation brought by different plaintiffs that the relevant "who" group for the negligence theory was plaintiffs and their caregivers and that the relevant "who" group for the strict-liability theory was consumers in the 1950s and earlier. *See Burton v. American Cyanamid*, 334 F. Supp. 3d 949, 961–67 (E.D. Wis. 2018). As for the "what," I had found that plaintiffs' evidence failed to show that the manufacturers had no reason to believe that consumers like plaintiffs and their caregivers would not have realized the dangers of lead paint in the 1990s and early 2000s, but that plaintiffs' evidence would have allowed a jury to find that defendants had no reason to believe that pre-1950 consumers were aware of those dangers. *Id.* In *Burton*, the Seventh Circuit reversed the "who" part of my decision and held that, for both the negligence and strict-liability theories, the relevant group comprised those who consumed residential paint when plaintiffs or their caregivers did. *Burton*, 994 F.3d at 821–23. However, the Seventh Circuit did not address the "what" question. Instead, because plaintiffs did not appeal my ruling that defendants had no duty to warn for purposes of the negligence theory, the court simply applied that ruling to the strict-liability theory. *Id.*

In support of their amended complaints, the current plaintiffs make two arguments concerning the duty to warn. First, they contend that if the relevant "who" group comprises those who consumed residential lead paint at the time plaintiffs and their caregivers did, then they should have an opportunity to prove that the manufacturers had no reason to believe that this group was already aware of the full extent of the dangers of lead paint. Second, plaintiffs essentially ask me to disregard the Seventh Circuit's decision in *Burton* and conclude that the relevant "who" group for both the negligence and strict-liability theories should consist of consumers of lead paint in the 1950s and earlier. (Br. in Opp. at 16–18.) However, as a matter of vertical *stare decisis*, I am bound by the Seventh Circuit's interpretation of Wisconsin law in *Burton*, even if it may be erroneous. *See Wesbrook v. Ulrich*, 840 F.3d 388, 399 (7th Cir. 2016) (Seventh Circuit's interpretation of state law has *stare decisis* effect); *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) (district court in Wisconsin must follow decisions of the Seventh Circuit). Accordingly, I must reject plaintiffs' invitation to reconsider whether the knowledge of consumers in the 1950s and earlier determines the existence of defendants' duty to warn. But the current plaintiffs, who are not bound by my factual determinations in the earlier litigation, are free to litigate the "what" issue from scratch, meaning that they may try to prove that manufacturers had no reason to believe that consumers in the late 1990s and early 2000s were fully cognizant of the dangers of lead paint.

Regarding this "what" question, defendants argue that the judicially-noticeable documents establish that, at the time plaintiffs and their caregivers consumed residential lead paint, manufacturers of such paint had reason to believe that consumers were already aware of the product's dangerous attributes. Defendants point to the history of

8

Case 2:11-cv-00425-LA   Filed 11/08/24   Page 8 of 16   Document 400

lead-paint regulation that began in the 1960s and the warnings about the dangers of lead paint that were aimed at the general public during the decades leading up to the time when plaintiffs ingested the lead paint in their homes. (Br. in Supp. at 7–14.) I may take judicial notice of these publicly available documents, the contents of which are not reasonably subject to dispute.[3] *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). However, these documents do not establish that plaintiffs will be unable to carry their burden to show that manufacturers in the late 1990s and early 2000s had no reason to believe that consumers were already fully aware of the dangers of lead paint. Indeed, plaintiffs have not even had a chance to present their own evidence about the state of the public's knowledge at the time. And, as I noted earlier, plaintiffs were not required to plead in their complaints all facts that they would need to produce to survive summary judgment. *See Graham*, 8 F.4th at 627.

In any event, plaintiffs have alleged that consumers in the 1990s and early 2000s were unaware of the specific dangers posed by lead dust, as opposed to the more commonly known dangers posed by visible lead-paint chips. (Gibson Am. Compl. ¶¶ 68–81.) Defendants point out that the duty-to-warn standard is objective and focuses on what the manufacturer had reason to believe, rather than on what any specific consumer believed. But even if that were true, evidence about consumer knowledge is indicative of what defendants had reason to believe about the state of that knowledge. In other words,

---

[3] I note, however, that the *effect* of these documents on defendants' duty to warn is contested. I take judicial notice only of the contents of these documents and the fact that they were in existence at the relevant times.

9

if the public was not fully aware of the dangers of lead paint, then it is reasonable to think that defendants should have known that the public was not fully aware of those dangers.

Further, defendants' evidence about the existence of public warnings does not, as a matter of law, defeat plaintiffs' allegation that the public remained ignorant of the full extent of the dangers of lead paint. To the contrary, evidence of public warnings arguably could be construed as evidence that the defendants should have known that the public was not yet fully aware of those dangers. After all, if the public was already fully aware of those dangers, why would governmental agencies continue to require warnings? Perhaps evidence that the government had *repealed* warning laws would establish that warnings were no longer needed, but that's not the evidence defendants have produced. Indeed, as late as 1996, federal agencies were *expanding* their warning requirements rather than cutting back on them, which suggests that large swaths of the public remained ignorant of lead paint's dangers. (Br. in Supp. at 9–12.) Thus, at this stage of the case, I cannot say that plaintiffs will be unable to establish that defendants had a duty to warn consumers in the 1990s and 2000s about the hidden dangers of their products.

## C. General Negligence

In their second cause of action, plaintiffs allege a "general negligence" theory in which they contend that defendants can be liable for negligence even in the absence of a showing that the product they sold was defective.[4] (Gibson Am. Compl. ¶ 101.) In *Burton*, however, the Seventh Circuit held that, under Wisconsin law, if there is no product

---

[4] Under Wisconsin law, there are three kinds of product defects: manufacturing defects, design defects, and defects based on a failure to warn. *Burton*, 994 F.3d at 818. Plaintiffs' first and third causes of action allege a product defect based on a failure to warn. Their second cause of action alleges negligence in the absence of any product defect.

defect, there can be no negligence liability. *Burton*, 994 F.3d at 820. Plaintiffs argue that the Seventh Circuit has misinterpreted Wisconsin law, and that therefore their general negligence claim should survive. But, as I noted above, I am bound by the Seventh Circuit's interpretation of Wisconsin law as a matter of vertical *stare decisis*, and therefore I may not revisit this issue and reach a different result. *Wesbrook*, 840 F.3d at 399; *Glaser*, 14 F.3d at 1216 (7th Cir. 1994). Accordingly, plaintiffs' second cause of action fails as a matter of law and must be dismissed.

**D.    Public Nuisance**

Finally, defendants move to dismiss plaintiffs' fourth cause of action alleging public nuisance. In this part of their complaint, plaintiffs contend that defendants contributed to the creation of a public nuisance by producing, promoting, and marketing lead paint and white lead carbonate for residential use in the City of Milwaukee. (Gibson Am. Compl. ¶ 128.) Defendants contend that, for several reasons, this legal theory fails as a matter of law.[5]

First, defendants contend that liability for a public nuisance requires proof that the defendant engaged in some underlying tortious conduct, and that because plaintiffs' product-liability theories fail as a matter of law, so too must their public nuisance theory. It is true that liability for public nuisance requires proof of tortious conduct. *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 277 Wis.2d 635, 656 (2005). However, as discussed above, plaintiffs have pleaded viable claims for products liability under strict-

---

[5] Defendants also contend that I did not grant plaintiffs leave to plead this legal theory. However, when I granted plaintiffs leave to amend, I did not place restrictions on what the amended complaints could contain.

liability and negligent failure-to-warn theories. Therefore, their public nuisance theories cannot be dismissed for failure to plead the underlying tortious conduct.

Second, defendants contend that plaintiffs cannot maintain a community-wide nuisance claim because they lack standing to remedy those aspects of the nuisance that harm members of the community other than themselves. This argument was aimed at plaintiffs' request for abatement of the nuisance in their complaints. However, as noted, plaintiffs have since withdrawn their request for abatement and have made clear that the only relief they seek is damages to compensate them for their personal injuries. (Br. in Opp. at 3 n.2 & 21 n.12.) Accordingly, I do not need to address defendants' arguments relating to abatement.

Third, defendants contend that plaintiffs do not allege a cognizable "public right." Defendants' reference to a public right relates to the basic definition of a public nuisance, which is "a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 254 Wis. 2d 77, 89 (2002). Defendants contend that because plaintiffs' injuries were caused by lead paint inside private residences, their injuries were not caused by defendants' interference with a public right. Here, however, the alleged right is not simply the right to enjoy a single private residence, but the public's right to residential housing stock that is not contaminated by lead paint. In other words, it is the proliferation of "residential paint containing white lead carbonate pigments" throughout the housing stock of the City of Milwaukee that is the alleged public nuisance. (Gibson Am. Compl. ¶ 127.) Thus, although lead paint in a single home does not qualify as a public

12

nuisance, it does not follow that the aggregate effect of lead paint on the public's right to safe housing does not.

In response to this point, defendants contend that the Wisconsin courts would not recognize a public right to residential housing that has not been contaminated by lead paint. They cite to cases decided under the laws of other jurisdictions that have either rejected or expressed doubt over the idea that residential lead-paint contamination could be a public nuisance. *See Atl. Richfield Co. v. Cnty. of Montgomery*, 294 A.3d 1274, 1285 (Pa. Commw. Ct. 2023); *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 455 (R.I. 2008); *Cofield v. Lead Indus. Ass'n, Inc.*, No. Civ.A. MJG–99–3277, 2000 WL 32492681, at *7 (D. Md. Aug. 17, 2000). However, the Wisconsin courts have permitted a public-nuisance claim against lead-paint manufacturers to proceed to trial. *See City of Milwaukee v. NL Indus., Inc.*, 278 Wis. 2d 313 (Ct. App. 2004) ("*City of Milwaukee I*"). In that case, the claim was submitted to the jury, which found that "the presence of lead-based paint in and on houses in the City of Milwaukee [was] a public nuisance." *City of Milwaukee v. NL Indus.*, 315 Wis. 2d 443, 458 (Ct. App. 2008) ("*City of Milwaukee II*"). To be sure, the case did not require a Wisconsin appellate court to decide as a matter of law whether residential lead paint could be a public nuisance. *See City of Milwaukee I*, 278 Wis. 2d at 322 (noting that parties conceded for purposes of summary judgment that a public nuisance existed). But the mere fact that the claim was allowed to go to the jury is some evidence that Wisconsin courts understand the state's public nuisance doctrine to provide a potential remedy for community-wide harms caused by lead paint. And against defendants' citation to non-Wisconsin cases rejecting lead-paint contamination as a potential public nuisance, plaintiffs cite to a California lead-paint case that explicitly

13

recognizes a public right to "housing that does not poison children." *People v. ConAgra Grocery Prods. Co.*, 227 Cal. Rptr. 3d 499, 552 (Cal. Ct. App. 2017). For these reasons, I am reluctant to rule, based on the pleadings alone, that the Wisconsin Supreme Court would not recognize a public right to housing stock that is not contaminated by lead paint. Plaintiffs may proceed with this theory. If necessary, I will make the "*Erie* guess" required to resolve this issue at summary judgment, when the record will be more complete. *See In re Generac Solar Power Sys. Mktg., Sales Pracs. & Prod. Liab. Litig.*, __ F. Supp. 3d __, 2024 WL 2519778, at *7 (E.D. Wis. May 24, 2024) (discussing reluctance to make "drive by *Erie* guesses" at the pleading stage).

Fourth, defendants contend that plaintiffs' personal injuries do not qualify as the kind of "special injury" that is ordinarily needed for a private plaintiff to recover damages caused by a public nuisance. The Restatement (Second) of Torts addresses the special injury requirement. Under the Restatement, a private individual seeking to recover damages for injuries caused by a public nuisance must allege an injury "of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of the interference." Restatement (Second) of Torts § 821C (Am Law Inst. 1975). For example, if a defendant creates a public nuisance by digging a trench across a public highway and preventing the public from using the highway for travel, a detoured plaintiff cannot maintain an action against the defendant to recover the costs associated with his delay because every member of the public who attempted to use the highway would have suffered the same injury. However, if instead of merely being detoured by the trench, the traveler falls into the trench and suffers

14

Case 2:11-cv-00425-LA    Filed 11/08/24    Page 14 of 16    Document 400

personal injuries, then the Restatement would allow him to maintain an action for damages against the defendant. *Id.* cmt. d., illus. 2.

In the present case, defendants contend that if the public nuisance is the contamination of residential housing stock by lead paint, then plaintiffs could not have suffered special injuries because the nuisance would have caused the same injury to every member of the public who was affected by it. However, the Restatement recognizes that personal injuries are "normally different in kind" from the injuries suffered by the general public. Restatement § 821C cmt. d. Moreover, the Wisconsin Supreme Court appears to view any personal injury as a special injury, even if the public nuisance in question is a nuisance precisely because it creates a risk of personal injuries. In *Physicians Plus Insurance Corp. v. Midwest Mutual Insurance Co.*, the court found that "tree branches obstructing the view of [a] stop sign resulted in a public nuisance as a matter of law." 254 Wis. 2d at 90. The court then allowed a motorcyclist and his passenger to recover damages under a public nuisance theory for the personal injuries they suffered when another driver failed to see the stop sign and collided with the motorcycle in the intersection. *Id.* at 91–92, 140–42. The court's opinion addressed the elements of a public nuisance claim under Wisconsin law, and it did not suggest that the personal injuries at issue were not special injuries. *Id.* at 100–40. That was so despite the fact that the only reason an obstructed stop sign could be a nuisance is because it creates a risk of accidents and personal injuries. Thus, although residential lead-paint contamination may be a public nuisance only because of the risk it poses to children's safety, it appears that the Wisconsin Supreme Court would allow an injured child to maintain an action for personal-injury damages if the lead-paint hazard qualified as a public nuisance. As

15

recognized by the Western District of Wisconsin in a personal-injury case alleging a public nuisance arising out of asbestos contamination, "[i]f the facts in *Physicians Plus* establish the necessary special injury, so, too, do the facts alleged here." *Boyer v. Weyerhaeuser Co.*, No. 14-cv-286-wmc, 2015 WL 3485262, at *3 (W.D. Wis. June 2, 2015).

Accordingly, I will not dismiss plaintiffs' public nuisance legal theory.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motions to dismiss the first amended complaints are **GRANTED IN PART** and **DENIED IN PART**. The motions are granted to the extent that the second cause of action for general negligence in each complaint is dismissed. I also dismiss plaintiffs' abatement allegations based on their withdrawal of such allegations and make clear that, as a matter of law, the existence of defendants' duty to warn will turn on the knowledge of consumers in the 1990s and 2000s, rather than on the knowledge of consumers in the 1950s and earlier. In all other respects, the motions to dismiss are denied.

Dated at Milwaukee, Wisconsin, this 8th day of November, 2024.

/s/Lynn Adelman  
LYNN ADELMAN  
United States District Judge